# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

DACA DESIGN LLC,

      Plaintiff,

v.                                    Case No.

HANGTIME LLC, and
HARBHAJAN S. KHALSA,

      Defendants.

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff DACA Design LLC ("DACA" or "Plaintiff"), by and through its attorneys, for its Complaint against Hangtime LLC ("Hangtime") and Harbhajan S. Khalsa ("Haj" and, with Hangtime, "Defendants") hereby alleges, upon knowledge as to itself and its own actions and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      This is a civil action wherein Plaintiff seeks relief and damages under Title 35 of the United States Code for infringement of United States Letters Patent No. 11,523,666 ("the '666 Patent").

2.      In this action, Plaintiff seeks declaratory, injunctive, monetary and equitable relief, compensatory and treble damages, and costs, expenses and attorneys' fees pursuant to 35 U.S.C. § 281 *et seq.*, 28 U.S.C. §§ 2201 & 2202.

## SUBJECT MATTER JURISDICTION

3.      This Court has subject matter jurisdiction of this action under 35 U.S.C. §§ 271 & 281, and 28 U.S.C. §§ 1331 & 1338(a) & (b).

4.      Declaratory, injunctive, and equitable relief is sought pursuant to 28 U.S.C. §§ 2201, 2202, and 35 U.S.C. § 283.

5.      Damages are sought pursuant to 35 U.S.C. §§ 281 & 284.

6.      Costs and attorneys' fees are sought pursuant to 35 U.S.C. § 285, and Rule 54 of the Federal Rules of Civil Procedure.

## PERSONAL JURISDICTION

7.      Defendants are subject to this Court's general personal jurisdiction due to Defendants residing and conducting business in this Judicial District.

## VENUE

8.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 & 1400(b).  Upon information and belief, Defendants reside in this Judicial District, have committed acts of infringement, and have a regular and established place of business in this Judicial District.

## PARTIES

9.      Plaintiff DACA is a New York limited liability company with a principal place of business at 33 Lindbergh Street, Garden City, New York 11530.

10.     Defendant Hangtime is a New Mexico limited liability company having a principal place of business at 1603 Salvador Place, Santa Fe, New Mexico 87501.

11.     Upon information and belief, Defendant Haj is the founder and chief executive officer of Hangtime, and is a citizen of, and resides in, the state of New Mexico.

12.     Upon information and belief, and according to Hangtime's New Mexico Secretary of State Corporate and Business Services registration documents, Haj is the registered agent of Hangtime, with an address of 1713A West Alameda Street, Santa Fe, New Mexico 87501.

13.     Upon information and belief, Haj has authority and control over the products distributed by Hangtime and willfully and intentionally directed the infringement of the '666 Patent, which tortious acts were committed within this judicial district.

## FACTUAL BACKGROUND

### A.  Patent In Suit

14.     The '666 Patent is entitled "Securement Apparatus for Portable Electronic Device" and relates to an apparatus for holding a portable electronic device such as a smartphone; a user may secure the apparatus to an article of clothing or hang it from a lanyard to wear around the neck, thus freeing the user's hands.  The co-inventors of the '666 Patent are Nina Bransfield and Brannen Brock.  The '666 Patent was filed on April 5, 2021.  On December 13, 2022, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '666 Patent.

15.     DACA is the assignee and the lawful owner of all rights, title, and interest in and to the '666 Patent, by virtue of an assignment of all rights, title, and interest in that Patent from its co-inventors, and has standing to sue for infringement of the '666 Patent.  A true and correct copy of the '666 Patent is annexed hereto as **Exhibit 1**.

16.     The '666 Patent is valid and enforceable.

### B.  Accused Product

17.     Defendants manufacture, use, offer to sell, sell, market, import, and/or distribute at least one model of securement apparatus that infringes the '666 Patent (the "Accused Product"),

an example of which is sold as Hangtime's "KOALA® 2.0 Super-Grip Smartphone Harness" and available for purchase on Hangtime's website, located at https://www.hangtimegear.com/products/koala-2-0-super-grip-smartphone-harness.   A printout of this product page is annexed hereto as **Exhibit 2**.

18.     The Accused Product is also available for purchase from Hangtime's Facebook page, located at https://www.facebook.com/commerce/products/koala-20-super-grip-smartphone-harness/5613121902038319/.   A printout of the Facebook product page is annexed hereto as **Exhibit 3**.

19.     The Accused Product is covered by at least claims 1, 9, and 15 of the '666 Patent.

20.     The Accused Product's components, configuration, and operation, meet each of the limitations/elements of at least claims 1, 9, and 15 of the '666 Patent.

21.     As a non-limiting example, Defendants have infringed claim 1 of the '666 Patent. Claim 1 claims as follows:

1.   A securement apparatus for a portable electronic device comprising:

a body having a perimeter defining therewithin an elastomeric panel;

a plurality of elastomeric bands extending from the panel, the plurality of bands defining at least three openings adapted to receive a comer of the portable electronic device;

the body having a node being secured to an upper portion of the panel, at least two of the plurality of bands being secured to the node and extending downwardly and connecting to the panel;

an attachment element coupled to the node;

a flexible strap extending from the attachment element having a distal end connected to an attachment device adapted to be secured to a user; and

wherein two bands of the plurality of bands each have an end connected to a panel

bottom portion, and the two bands together form a W-shaped element.

22.    Defendants have infringed at least claim 1 of the '666 patent in that all limitations of claim 1 correspond to elements of the Accused Product.

**C. Notice of Infringement**

23.    On April 5, 2021, DACA filed United States patent application 17/222,465 ("the '465 Application"), the published application from which the '666 Patent issued.

24.    On August 1, 2022, then-counsel for DACA sent a letter to counsel for Hangtime informing them that the Accused Product infringed the '465 Application.

25.    As a result, no later than August 2022, Defendants had actual knowledge of both the '465 Application and the ensuing '666 Patent.

26.    On December 13, 2022, the '666 Patent issued from the '465 Application without significant changes or amendments.

27.    Defendants have continued to manufacture, use, offer to sell, sell, market, import, and/or distribute the Accused Product.

28.    Upon information and belief, Defendants' infringement is willful.

29.    The invention protected by the '666 Patent has achieved substantial commercial success.

<u>**FIRST CAUSE OF ACTION**</u>

**DIRECT INFRINGEMENT OF U.S. PATENT NO. 11,523,666**

30.    Plaintiff repeats and realleges each of the preceding paragraphs, inclusive, as if set forth in full herein.

31.     All Defendants, and each of them, subsequent to the issuance of the '666 Patent, jointly and severally, have been and are now directly infringing the '666 Patent in this judicial district and elsewhere throughout the United States, by manufacturing, using, offering to sell, selling, marketing, importing, and/or distributing products which fall within the scope of at least one claim of the '666 Patent without license or authorization.  Such acts constitute infringement under at least 35 U.S.C. § 271(a), (b) & (c).

32.     Upon information and belief, each Defendant has been aware of the '666 Patent, and the preceding '465 Application, since at least approximately August 1, 2022, when counsel to Plaintiff sent a letter to counsel to Hangtime informing them of the infringement.  Each Defendant has yet to cease and desist.  Each Defendant's infringement has therefore been reckless, without objective basis, and willful.

33.     Upon information and belief, each Defendant's infringement of the '666 Patent is willful, wanton, and deliberate, and with full knowledge of the aforesaid facts, in disregard of Plaintiff's rights thereunder.  Unless enjoined by this Court, each Defendant will continue their acts of infringement to Plaintiff's great and irreparable damage.

34.     Each Defendant's willful infringement of the '666 Patent by manufacturing, using, offering to sell, selling, marketing, importing, and/or distributing its infringing products has been without the consent or license of Plaintiff.  In all likelihood, each Defendant will continue and will expand such acts of infringement, to the irreparable harm of Plaintiff, unless permanently enjoined from doing so by this Court during the unexpired term of the '666 Patent.

35.     Upon information and belief, each Defendant has also knowingly and intentionally actively aided, abetted, and induced others to infringe (such as its customers, its customers' clients, its agents and/or business partners in this judicial district and throughout the United States).

36.     As a direct and proximate consequence of this infringement, Plaintiff has been, is being, and, unless such acts and practices are enjoined by this Court, will continue to be injured in its business and property rights, and has suffered, is suffering, and will continue to suffer injury and damages for which it is entitled to relief under 35 U.S.C. § 284 adequate to compensate for such infringement, but in no event less than a reasonable royalty.

37.     Plaintiff is entitled to recover from each Defendant the damages sustained by Plaintiff as a result of each Defendant's wrongful acts in an amount subject to proof at trial.

38.     Plaintiff has no adequate remedy at law.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on the triable issues raised in this Complaint.

## DEMAND FOR RELIEF

WHEREFORE, DACA prays for judgment against Defendants Hangtime and Haj jointly and severally, as follows:

A.     A judgment that Hangtime and Haj have willfully and intentionally infringed one or more claims of the '666 Patent.

B.     A preliminary and permanent injunction pursuant to 35 U.S.C. § 283 restraining Hangtime and Haj, their respective officers, directors, principals, agents, servants, employees, attorneys, successors, and assigns, and all those acting in concert, combination, or participation with any of them either directly, indirectly, singularly,

or together, from, *inter alia*, manufacturing, using, offering to sell, selling, marketing, importing, and/or distributing any infringing commercial embodiment of the '666 Patent.

C.   A preliminary and permanent injunction pursuant to 35 U.S.C. § 283 restraining Hangtime and Haj, their respective officers, directors, principals, agents, servants, employees, attorneys, successors, and assigns, and all those acting in concert, combination, or participation with any of them either directly, indirectly, singularly, or together, from committing further infringement of the '666 Patent.

D.   An Order requiring the destruction of all products which infringe the '666 Patent together with the destruction of all sales, marketing, or promotional materials used for the distribution and/or sale of said infringing products which are in Hangtime's and Haj's possession or control, together with the forfeiture of all apparatus used for the manufacture of said infringing products, which are in Hangtime's and Haj's possession or control.

E.   An accounting for damages against Hangtime and Haj on each count set forth herein including, but not limited to, a full accounting of Hangtime's and Haj's commercial sales pursuant to 35 U.S.C. § 284.

F.   That DACA be awarded damages adequate to compensate it for Hangtime's and Haj's infringement of the '666 Patent, including lost profits, together with prejudgment and post judgment interest.

G.      That the Court treble the aforesaid damages sustained by DACA (as stated in
        paragraph 'F' above) by reason of said acts of willful patent infringement
        complained of herein.

H.      A finding that this case is exceptional, and that DACA be awarded its attorneys'
        fees pursuant to 35 U.S.C. § 285.

I.      That DACA be awarded its costs.

J.      That DACA be awarded such other and further relief as the Court deems just and
        proper.

*Respectfully submitted,*

*/s/ Monica R. Garcia*
Monica R. Garcia, Esq.
Butt Thornton & Baehr PC
4101 Indian School Road, NE
Suite 300S
Albuquerque, New Mexico 87110
Phone: 505.884.0777
Fax: 505.889.8870
mrgarcia@btblaw.com

and

Robert J. Rando, Esq.
(pro hac vice application forthcoming)
Greenspoon Marder LLP
1345 Avenue of the Americas, Suite 2200
New York, New York 10105
Phone: 212.524.5006
robert.rando@gmlaw.com

*Attorneys for Plaintiff*

# EXHIBIT 1

US011523666B2

## (12) United States Patent
### Bransfield et al.

(10) Patent No.: **US 11,523,666 B2**

(45) Date of Patent: ***Dec. 13, 2022**

(54) **SECUREMENT APPARATUS FOR A PORTABLE ELECTRONIC DEVICE**

(71) Applicant: **Daca Design LLC**, Garden City, NY (US)

(72) Inventors: **Nina Bransfield**, Garden City, NY (US); **Brannen Brock**, Port Washington, NY (US)

(73) Assignee: **Daca Design LLC**, Garden City, NY (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **17/222,465**

(22) Filed: **Apr. 5, 2021**

(65) **Prior Publication Data**

US 2021/0219684 A1 Jul. 22, 2021

### Related U.S. Application Data

(63) Continuation of application No. 15/989,474, filed on May 25, 2018, now Pat. No. 10,986,907, which is a
(Continued)

(51) **Int. Cl.**
| | |
|---|---|
| *A45F 5/00* | (2006.01) |
| *A45C 11/00* | (2006.01) |
| *A45F 5/02* | (2006.01) |

(52) **U.S. Cl.**
CPC ............... *A45C 11/00* (2013.01); *A45F 5/00* (2013.01); *A45F 5/02* (2013.01);
(Continued)

(58) **Field of Classification Search**
CPC ........ A45F 2200/0516; A45F 2200/008; A45F 2200/0525; A45F 5/02; A45F 5/00; F16M 13/04
(Continued)

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,120,332 A * | 2/1964 | White | A45B 11/02 224/189 |
| 4,771,927 A | 9/1988 | Ventura | |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| CA | 2620603 A1 | 8/2008 |
| CA | 2671639 A1 | 1/2010 |

(Continued)

OTHER PUBLICATIONS

"Easy Macro Cell Lens Band—The Photojojo Store!" http://photojojo.com/store/awesomeness/macro-lens-band/—undated.
(Continued)

*Primary Examiner* — Adam J Waggenspack

(74) *Attorney, Agent, or Firm* — Hoffmann and Baron, LLP

(57) **ABSTRACT**

A securement apparatus for a portable electronic device including a body having a panel and a plurality of elastomeric retainers secured to and extending from the panel. Each retainer forming a loop defining an opening, the openings adapted to receive therein a corner of a handheld electronic device. A tether is connected to and extending from the body. A strap is secured to the tether. An attachment device is operably connected to the strap to secure the apparatus to a member.

**17 Claims, 7 Drawing Sheets**



**US 11,523,666 B2**

Page 2

### Related U.S. Application Data

continuation of application No. 14/747,742, filed on Jun. 23, 2015, now Pat. No. 9,980,542, which is a continuation of application No. 13/839,179, filed on Mar. 15, 2013, now Pat. No. 9,060,588.

(52) **U.S. Cl.**
CPC ... *A45C 2011/002* (2013.01); *A45F 2005/006* (2013.01); *A45F 2005/023* (2013.01); *A45F 2200/0516* (2013.01); *Y10T 24/1397* (2015.01); *Y10T 29/49947* (2015.01)

(58) **Field of Classification Search**
USPC ....... 224/250, 254, 930, 269, 677; D14/250, D14/253, 251, 252, 440, 447; D3/214
See application file for complete search history.

(56) **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,785,984 | A | 11/1988 | Seitz-Gangemi |
| 5,535,928 | A | 7/1996 | Herring |
| 5,653,336 | A | 8/1997 | Buonaiuto et al. |
| 5,806,730 | A * | 9/1998 | Deno ........................ A45F 5/02 |
| | | | 224/148.6 |
| 6,182,878 | B1 | 2/2001 | Racca |
| 6,345,751 | B1 | 2/2002 | Elliot |
| D467,069 | S | 12/2002 | TenHoeve |
| 6,568,576 | B1 | 5/2003 | Godshaw et al. |
| D482,671 | S | 11/2003 | DiDonato |
| 6,662,986 | B2 | 12/2003 | Lehtonen |
| D518,950 | S | 4/2006 | Condiff |
| 7,050,841 | B1 * | 5/2006 | Onda ........................ A45F 5/02 |
| | | | 455/550.1 |
| 7,120,247 | B1 | 10/2006 | Wade |
| 7,270,255 | B2 | 9/2007 | Badillo et al. |
| 7,431,251 | B2 * | 10/2008 | Carnevali ............. F16M 13/00 |
| | | | 224/183 |
| 7,584,710 | B2 | 9/2009 | Grundy et al. |
| 7,938,260 | B2 | 5/2011 | Lin |
| D656,479 | S | 3/2012 | Lin |
| 8,220,767 | B2 | 7/2012 | Lin |
| 8,256,568 | B2 | 9/2012 | Lin |
| D669,462 | S | 10/2012 | Avrahami et al. |
| 8,424,831 | B2 | 4/2013 | Lin |
| D691,991 | S * | 10/2013 | Mohan ........................ D14/250 |
| 8,561,862 | B2 | 10/2013 | Foggiato |
| D693,580 | S | 11/2013 | Baker |
| 8,714,422 | B2 | 5/2014 | Yu |
| D717,538 | S * | 11/2014 | Bransfield ..................... D3/218 |
| 9,060,588 | B2 * | 6/2015 | Bransfield ............. A45C 11/00 |
| 9,980,542 | B2 * | 5/2018 | Bransfield ................ A45F 5/00 |
| 10,856,642 | B1 * | 12/2020 | Spell ........................ A45F 5/02 |
| 2004/0069822 | A1 * | 4/2004 | Condiff ..................... A45F 5/00 |
| | | | 224/269 |
| 2004/0069823 | A1 | 4/2004 | Condiff |
| 2004/0069824 | A1 * | 4/2004 | Condiff ..................... A45F 5/02 |
| | | | 224/269 |
| 2005/0284903 | A1 | 12/2005 | Knapp |
| 2006/0113345 | A1 | 6/2006 | Zoullas |
| 2007/0205236 | A1 * | 9/2007 | Partusch ................ A45F 3/02 |
| | | | 224/250 |
| 2011/0036876 | A1 | 2/2011 | Fathollahi |

| | | | |
|---|---|---|---|
| 2011/0284599 | A1 | 11/2011 | Sternick |
| 2012/0024917 | A1 * | 2/2012 | Case ........................ A45F 5/021 |
| | | | 224/259 |
| 2012/0063066 | A1 | 3/2012 | Floit |
| 2012/0091307 | A1 | 4/2012 | Haynes |
| 2012/0091312 | A1 * | 4/2012 | Baker ................... F16M 13/04 |
| | | | 248/682 |
| 2012/0097831 | A1 | 4/2012 | Olukotun et al. |
| 2012/0267402 | A1 | 10/2012 | Beatty |
| 2012/0285859 | A1 | 11/2012 | Law et al. |
| 2014/0192478 | A1 * | 7/2014 | Houvener ............... G06F 1/163 |
| | | | 361/679.41 |

#### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| CN | 201104362 Y | 8/2008 |
| CN | 201226923 Y | 4/2009 |
| CN | 201957239 U | 8/2011 |
| CN | 206511348 U | 9/2017 |
| CN | 206852241 U | 1/2018 |
| DE | 202019103074 U1 | 6/2019 |
| EP | 1370051 A1 | 12/2003 |
| GB | 2479903 A | 11/2011 |
| MY | 142527 A | 12/2010 |
| TW | M317785 U1 | 9/2007 |
| TW | M328810 U | 3/2008 |
| TW | M329359 U | 4/2008 |
| TW | M330003 U1 | 4/2008 |
| TW | M333024 U | 5/2008 |
| TW | M344774 U | 11/2008 |
| TW | M384563 U1 | 7/2010 |
| TW | M384850 U1 | 7/2010 |
| TW | M394026 U1 | 12/2010 |
| TW | M394726 U1 | 12/2010 |
| TW | M404462 U1 | 5/2011 |
| TW | M404554 U1 | 5/2011 |
| TW | M404555 U1 | 5/2011 |
| TW | M405128 U1 | 6/2011 |
| TW | M423983 U1 | 3/2012 |
| TW | M440608 U1 | 11/2012 |
| TW | M450868 U1 | 4/2013 |
| TW | M452569 U1 | 5/2013 |
| TW | M452589 U1 | 5/2013 |
| TW | M483616 U | 8/2014 |
| TW | M496380 U | 7/2015 |
| TW | M540540 U | 5/2017 |
| TW | M544231 U | 7/2017 |
| TW | M576560 U | 4/2019 |
| TW | M588404 U | 12/2019 |

#### OTHER PUBLICATIONS

"Bandi—Wrap it up" http://www.ibondi.us/get-bondi/bandi-wrap-it-up.html—undated.
"Bondi—Hang it on!" http://www.ibondi.us/get-gondi/bondi-hang-it-on.html—undated.
Design U.S. Appl. No. 29/449,128 to Nina Bransfield and Brannen Brock filed Mar. 14, 2013.
"Amazon.com: AmazonBasics Leather Folio Cover with Multi-Angle Adjustable Stand for the New iPad, iPad 2, iPad1, and Samsung Galaxy Tab 10.1 (Black)" http://www.amazon.com/AmazonBasics-Leather-Multi-Angle-Adjustable-Samsung/dp/B005VTGB0S/ref=sr_1_1?ie=UTF8&qid=1371052980&sr=8-1&keywords=amazonbasics+leather=multi+angle—undated.

* cited by examiner

Case 1:24-cv-00319-JMR-SCY   Document 1   Filed 04/02/24   Page 13 of 32



Fig. 1



Fig. 2

Fig. 3





Fig. 4

Fig. 4A

Fig. 5





Fig. 6

Fig. 7

Fig. 8



Fig. 9

Fig. 9A

US 11,523,666 B2

1

## SECUREMENT APPARATUS FOR A PORTABLE ELECTRONIC DEVICE

### CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a continuation application of U.S. Ser. No. 15/989,474, filed May 25, 2018, which is a continuation of U.S. application Ser. No. 14/747,742, filed Jun. 23, 2015, issued as U.S. Pat. No. 9,980,542 on May 29, 2018, which is a continuation of U.S. application Ser. No. 13/839,179, filed Mar. 15, 2013, issued as U.S. Pat. No. 9,060,588 on Jun. 23, 2015, the specification of each being incorporated herein by reference in their entirety for all purposes.

### FIELD OF THE INVENTION

The present invention relates to a device for securing a portable electronic device. More particular, the present invention relates to an elastomeric apparatus securable to the device and the apparatus being securable to a user.

### BACKGROUND

Portable electronic devices may include handheld mobile devices such as cell phones, smartphones, tablets, music/mp3 players, and cameras. Such devices are becoming ever more popular with users. Due to the portable nature of these devices, they can be placed in pockets of jackets, coats, pants or shirts in order to carry them around. This method of transportation, however, makes the devices susceptible to being unintentionally dropped or otherwise separated from the user or their gear. This is especially the case as the devices become larger in order to provide larger viewing screens, such as is the case with smartphones.

In certain situations, even if a device has a sturdy case, damage or loss may occur when it is dropped. The device may fall out of a user's pocket with the user being unaware, thereby leading to loss of the device. In addition, when a user engages in activities such as skiing or boating, if the electronic device were to become inadvertently separated from the user or their gear, the device could easily become lost for good.

Certain attachment devices are known in the prior art for securing mobile devices to users. These attachment devices typically include straps that require a dedicated opening in the device or the case in order to allow the strap to be attached. However, many of the current portable devices lack this feature, thereby making it difficult to attach a securement strap.

Accordingly, it would be desirable to provide an apparatus that allows a handheld mobile electronic device to be safely secured to a user, their gear, or other member to which they wish to secure the apparatus.

### SUMMARY OF THE INVENTION

The present invention provides an apparatus for securing a handheld electronic device to a user, their gear, or other member to which they wish to secure the apparatus.

The present invention further provides a securement apparatus for a portable electronic device including a body having a panel and a plurality of elastomeric retainers secured to and extending from the panel. Each retainer forming a loop defining an opening, the openings adapted to receive therein a corner of a handheld electronic device. A tether is connected to and extending from the body. A strap

2

is secured to the tether. An attachment device is operably connected to the strap to secure the apparatus to a user.

The present invention further provides a cell phone securement device including an elastomeric body having a plurality of openings formed therein. The body has a plurality of bands extending from a central panel. The bands at least partially surround the openings. Each of the openings is adapted to receive a corner of a cell phone. The panel has four corners and ends of the bands join at each corner. A tether is secured to and extends from the body, and a strap is secured to the tether. An attachment device is operably connected to the strap. The attachment device is adapted to secure the apparatus to a member.

The present invention further provides a method of securing a mobile electronic device to a member including, providing a securement apparatus including a body having a panel and a plurality of elastomeric retainers secured to and extending from the panel, each retainer forming a loop defining an opening, the openings adapted to receive therein a corner of a handheld electronic device; a tether connected to and extending from the body; a strap secured to the tether; an attachment device operably connected to the strap;

inserting a corner of the mobile device in one of the openings and stretching the band defining the opening over a surface of the mobile device;

stretching the remaining bands over the remaining corners of the mobile device wherein each corner of the model device enters one of the openings of the securement apparatus, thereby securing the securement apparatus to the mobile device; and

attaching the attachment device to the member.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a front perspective view of the securement device of the present invention.

FIG. 2 is a top plan view of a mobile device with the securement device of FIG. 1 attached thereto.

FIG. 3 is a back side view of a mobile device with the securement device attached thereto.

FIG. 4 is a top plan view of the securement device.

FIG. 4A is a cross-sectional view taken along line 4A-4A thereof.

FIG. 5 bottom elevational view of the securement device.

FIG. 6 side elevational view of the securement device.

FIG. 7 is a top end view of the securement device.

FIG. 8 is a bottom end view of the securement device.

FIG. 9 is top plan view of a strap of the securement device.

FIG. 9A is a cross-sectional view taken along line 9A-9A of FIG. 9.

### DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

With reference to FIGS. 1-8, a securement apparatus 10 for securing a portable electronic device 11 to a member 13 is shown. The portable electronic device may be, for example, a cell phone, such as a smartphone, beeper, tablet, handheld GPS, music/mp3 player or camera. The member may include for example, a user, their clothing, bags or other gear, a structure of a vehicle or boat or other member. The securement apparatus 10, attaches to the portable electronic device 11, and the securement apparatus is then secured to a member in order to prevent its loss or damage. If the

US 11,523,666 B2

3

electronic device **11** were to fall out of one's, hand, pocket, or bag, it will remain attached to the user, for example, and not become lost or damaged.

The securement apparatus **10** includes a body **12** having a panel **14** and a plurality of elastomeric retainers **16** secured to, and extending from, the panel **14**. The retainers **16** may be in the form of elastic bands having ends which are operatively secured to the panel **14**. A tether **15** may extend outwardly from the body. In one embodiment, the body components and tether may be internally formed as one unitary piece. Alternatively, it is within the contemplation of the present invention that the different elements can be formed separately and then joined together as manners well known in the art. The material used to form the body and tether may include an elastomer having a high degree of elasticity and resistance to tearing such as silicon rubber. However, other elastomers or materials having elastomeric properties could be used.

The panel **14** may be generally centrically located and includes four corners to which the end of the bands are secured. In one embodiment, the panel **14** may take the shape of a diamond having two side corners **18** and **20** and a top **22** and bottom **24** corner. In this disclosure, the terms top and bottom are used to help describe relative position but are not intended to define a particular orientation. Additionally, it is within the contemplation of the present invention that the panel **14** could be formed in different shapes. The central panel **14** may be formed of a relatively flat piece of elastomeric material which allows it to stretch and return back to its original configuration. The panel edges **26** may be reinforced by a rim **28**. A groove **23** may be formed between the panel surface front surface **25** and the rim **28**. A panel back surface **27** (FIG. **5**) may be uniformly smooth without its surface. The rim **28** may be secured to the ends of the bands **16** such that the bands are secured to the panel **14** at a reinforced portion.

The panel may be secured to a node **30**. The node **30** is a reinforced portion of the body to which ends of two of the bands are connected to the panel top corner. The tether **15** is also secured to the node and extends outwardly in a direction opposed from that of the panel. The node **30** may have a generally triangular shape that tapers to a relatively narrow neck **32** to which the panel top corner **22** attaches. The node may have a thickness similar to the rim **28**. The node **30** provides a strong securement location for the various elements and helps to resist their separation.

The plurality of bands **16** are resilient members that are stretchable over a portion of an electronic device **11** as will be described below. The bands **16** may have a generally round cross-section with a diameter of approximately in the range of 0.05" to 0.25". It is further contemplated that the bands could be formed having other cross-sectional configuration such as rectangular or elliptical. The bands form four openings **17** adapted to receive and accommodate the corners of the electronic device. The plurality of bands **16** includes a first pair of bands **34**. One of the first pair of bands **36** extends from a first side corner **18** up toward the node **30** which is attached to the top panel corner **22**. A second band **38** of the first pair extends from the opposite side corner **20** upwardly towards the node **30**. The first pair of bands **34** each have a generally arcuate configuration that bow outwardly from the panel when in the relaxed un-stretched position as shown in FIGS. **1**-**3**.

A second pair of elastic bands **40** are also included. One of the second pair of bands **42** is corrected to the panel first side corner **18** and extends downwardly to the panel bottom corner **24**. The second band **44** of the second pair extends

4

downwardly from the panel second side corner **20** toward the bottom corner **24**. Accordingly, the bottom ends **46** of the second pair of bands are secured to the panel at substantially the same location. The second pair of bands **40** have a generally arcuate shape that bows outwardly from the panel **14**. The band bottom ends **46** each and have a portion that extends beyond the bottom corner **24** and curve upwardly to join therewith, creating a W-shaped structure.

The tether **15** attached to node **30** is an elongate member having a round distal end **50** including an aperture **52** formed therein. The tether is also formed of an elastomeric material and may be integrally formed with the body. In cross-section, as shown in FIG. **4**A, the tether may include a longitudinally extending groove **54** formed along the top and bottom side.

With reference to FIGS. **1**, **9**, and **9**A, a strap **60** may be secured to the tether distal end **50**. The strap **60** may be formed of a variety of materials such as elastomer, (same or different from the material used for the body), wire, nylon, leather strapping, rope, cord, etc. The strap **60** may include an elongate body **61** having a round first and second end **62** and **64**. In one embodiment, the strap **60** may have a ring opening disposed at each end. A first ring opening **66** formed on first end **62** may be extended through the tether aperture **52** allowing a portion of the strap to be pulled there though. The strap second end **64** may then extend through the first end ring opening **66** in order to allow the strap to be secured to the tether. In is within the contemplation of the present invention that alternative means of securing straps together such as those known in the art may be used.

The strap second end **64** may include an second ring **68** to which an attachment device **70** is operatively connected thereto. The attachment device **70** may be in the form of a clip, carabiner, clasp or other attachment device that may be removably attachable to a user (FIG. **1**). For example, the attachment device may be secured to a member such as piece of the user's clothing, e.g., a coat, pants, belt, belt loop, etc. In an alternative embodiment, the strap may be in the form of a neck lanyard having a clasp of a type known in the art which is securable to the tether. With the attachment device **70** secured to the member **13**, if the portable device **11** were to fall out of a user's hand, pocket, or gear, it would remain secured to the member **13**, thereby preventing loss or damage.

With reference to FIGS. **1**, **2**, and **3**, the securement apparatus **10** may be removably securable to a portable electronic device **11** such as a cell phone shown in dashed line. A portable device **11** may be placed into one of the four securement apparatus openings **17**. Due to the elastic nature of the bands **16**, they can be stretched over the corner **90** of the device. The remaining three bands may then be stretched over the other corners of the device such that all four corners of the device are secured, as shown in FIGS. **2** and **3**. The bands **16** resiliently engage the portable device **11** and retain the securement apparatus to the device **11**. In addition, the elastic nature of the panel **14** allow it to stretch to help the securement apparatus fit on the mobile device. The securement apparatus may be secured to the phone such that the flat back surface **27** of the panel lays adjacent the phone. Due to the elastic nature of the panel **14** and bands **16**, the apparatus **10** may be stretched to accommodate and resiliently engage portable electronic devices of different sizes. Removal of the securement apparatus **10** from the mobile device **90** simply requires stretching the bands **16** away from the mobile device **90** and pulling the apparatus away from the device.

US 11,523,666 B2

| 5 | 6 |

When the securement apparatus is placed on to the mobile device, a portion of the bands **16** extend over the front face of the cell phone as shown in FIG. **2**. However, since the bands extend just over the device's corners, they do not hinder the viewing of images on the device's screen. In addition, the resilient nature of the bands **16** help provide a degree of protection to the display when the portable device **11** is placed on a surface with the display facing downwardly.

As shown in FIG. **3**, when the securement apparatus is attached to the mobile device, the panel front surface **25** provides an area upon which graphics, images, or other indicia **92** may be placed thereon. The back surface **27** may also include indicia (not shown) that would be visible when the securement device is not attached to a mobile device.

It will be appreciated that variations of the above-disclosed and other features and functions, or alternative thereof, may be desirably combined into many other different systems or applications. Various presently unforeseen or unanticipated alternatives, modifications, variations, or improvements therein may be subsequently made by those skilled in the art which are also intended to be encompassed by the following claims. In addition, the claims can encompass embodiments in hardware, software, or a combination thereof.

What is claimed is:

**1**. A securement apparatus for a portable electronic device comprising:

a body having a perimeter defining therewithin an elastomeric panel;

a plurality of elastomeric bands extending from the panel, the plurality of bands defining at least three openings adapted to receive a corner of the portable electronic device;

the body having a node being secured to an upper portion of the panel, at least two of the plurality of bands being secured to the node and extending downwardly and connecting to the panel;

an attachment element coupled to the node;

a flexible strap extending from the attachment element having a distal end connected to an attachment device adapted to be secured to a user; and

wherein two bands of the plurality of bands each have an end connected to a panel bottom portion, and the two bands together form a W-shaped element.

**2**. The securement apparatus of claim **1**, wherein the node tapers as it extends from the panel to the attachment element.

**3**. The securement apparatus of claim **1**, wherein the body is formed of one piece of elastomeric material.

**4**. The securement apparatus of claim **1**, wherein the strap has a distal end including an opening to facilitate connection to the attachment device.

**5**. The securement apparatus of claim **1**, wherein the attachment device is at least one of a clip, a carabiner, and a clasp.

**6**. The securement apparatus of claim **1**, wherein the strap is removably secured to the attachment element.

**7**. The securement apparatus of claim **1**, wherein the attachment element includes an elongate tether.

**8**. The securement apparatus of claim **1**, wherein the strap is formed of an elastomeric material.

**9**. A securement apparatus for a portable electronic device comprising:

a body including an elastomeric panel;

a plurality of elastomeric bands coupled to the panel, the plurality of bands defining at least three openings

wherein each opening is adapted to receive therein a corner of the portable electronic device;

the body having a node being coupled to an upper portion of the panel, at least two of the plurality of bands each having a first end and a second end, the first ends of the at least two of the plurality of bands being coupled to the node and the at least two of the plurality of bands extending outwardly from the node and downwardly toward the panel, the second ends of the at least two of the plurality of bands being connected to the panel, and the entire portion of the at least two of the plurality of bands between the first and second ends and the panel lie in a same plane;

an attachment element coupled to the node and extending above the at least two of the plurality of bands; and

a flexible strap extending from the attachment element and including a distal end secured to an attachment device for removably securing the securement apparatus to a user.

**10**. The securement apparatus of claim **9**, wherein the attachment device is selected from the group consisting of a clip, a carabiner, and a clasp.

**11**. The securement apparatus as defined in claim **9**, wherein a portion of the panel extending downwardly from the node increases in width.

**12**. The securement apparatus as defined in claim **9**, wherein the panel, the attachment element, the node and the plurality of bands are all formed of one piece of elastomeric material.

**13**. The securement apparatus as defined in claim **9**, wherein the attachment element includes in aperture therethrough.

**14**. The securement apparatus as defined in claim **9**, wherein the flexible strap is removably secured to the attachment element.

**15**. A securement apparatus for a portable electronic device comprising:

a body having a perimeter defining therewithin an elastomeric panel;

a plurality of elastomeric bands extending from the panel, the plurality of bands defining at least three openings adapted to receive a corner of the portable electronic device;

the body having a node being secured to an upper portion of the panel, at least two of the plurality of bands being secured to the node and extending downwardly and connecting to the panel;

a flexible strap being secured to the node and having a distal end connected to an attachment device adapted to secure the strap to a user; and

wherein two bands of the plurality of bands each have an end connected to a panel bottom portion, and the two bands together form a W-shaped element.

**16**. The securement apparatus as defined in claim **15**, wherein at least two of the plurality of bands each having a first end and a second end, the first ends of the at least two of the plurality of bands being coupled to the node and the at least two of the plurality of bands extending outwardly from the node and downwardly toward the panel, the second ends of the at least two of the plurality of bands being connected to the panel, and the entire portion of the at least two of the plurality of bands between the first and second ends and the panel lie in a same plane.

**17**. A securement apparatus for a portable electronic device comprising:

US 11,523,666 B2

**7**

a body having a panel including a top and a bottom, the panel including a solid, uninterrupted, elastomeric portion extending between the panel top and the panel bottom;

the body further including a plurality of elastomeric retainers secured to the panel, each retainer forming an opening adapted to receive a corner of the portable electronic device;

a node coupled to the panel top, the plurality of retainers including a first and a second band each having a first and a second end, the first ends of the first and a second band being coupled to the node, the first and second bands extending from the node downwardly to the panel and the second ends of the first and the second band being coupled to the panel, and the plurality of retainers includes a third and a fourth band each including a first end coupled together below the panel bottom, and wherein the panel includes at least two opposed corners, and the third and fourth bands each have a second end, the second end of the third band is coupled to one corner of the at least two corners and the second end of the fourth band is coupled to the other corner of the at least two corners;

an attachment element secured to and extending upwardly from the node; and

a neck lanyard extending from the attachment element.

\*   \*   \*   \*   \*

# EXHIBIT 2

🌷 SPRING PROMO - BUY 2 GET 1 FREE 🌷



**KOALA** 2.0
Super-Grip Phone Harness

TIE DYE
NEW     SHOP KOALA 2.0     REVIEWS     FAQ



< 

   

   

   

 

>

## KOALA 2.0 Super-Grip Smartphone Harness

★★★★★ 1612 reviews

$34.50

Buy Now, Pay Later with ⊕ **four** ⓘ

3

HANGTIME                                    ⌄

Let us know if you have any
questions! 😊

I have a question

No, thanks

BUY ONE FOR ALL YOUR CLUMSY FRIENDS



🌷 SPRING PROMO - BUY 2 GET 1 FREE 🌷

 **KOALA** 2.0
Super-Grip Phone Harness

TIE DYE   SHOP KOALA 2.0   REVIEWS   FAQ
NEW

○ **3+ KOALA 2.0s**   33% off + Free Shipping          **$69.35**
*Best Deal!*                                              $103.50

Color

| #1 | Campfire Gray |
| #2 | Campfire Gray |
| #3 | Campfire Gray |

ADD TO CART

Warranty   Phone Fit   Specs   Features   Shipping

**LIFETIME WARRANTY**

The KOALA 2.0 is backed by our 100% Guarantee. If your KOALA 2.0 ever breaks or stops working, send it back and we'll replace it for free.





1

🌷 SPRING PROMO - BUY 2 GET 1 FREE 🌷



TIE DYE    SHOP KOALA 2.0    REVIEWS    FAQ

NEW

**10K+ Phones Saved**

## KOALA 2.0 Features



**Easy to attach**

Attach the KOALA 2.0 easily using either the Clamp or the Carabiner Clip (both included).

🌷 SPRING PROMO - BUY 2 GET 1 FREE 🌷



**KOALA** 2.0
Super-Grip Phone Harness

TIE DYE
NEW

SHOP KOALA 2.0    REVIEWS    FAQ



## Stretches up to 3 feet

The **KOALA 2.0** Tether stretches up to 3 feet. Perfect for selfies (if you're into that sort of thing). And ideal for saving your phone from the big dive!



## Camera-friendly KOALA 2.0

The **KOALA 2.0** stays clear of the camera lens on nearly every smartphone.

🌷 SPRING PROMO - BUY 2 GET 1 FREE 🌷


**KOALA** 2.0
Super-Grip Phone Harness

TIE DYE        SHOP KOALA 2.0        REVIEWS        FAQ
NEW

## We got you covered

With or without a case, the KOALA 2.0 has you covered!





## Experience worry-free adventures

Most importantly, the KOALA 2.0 gives you peace of mind wherever your adventures take you!

WILL IT FIT MY PHONE?

FAQs

WRITE A REVIEW

CONTACT

🌷 SPRING PROMO - BUY 2 GET 1 FREE 🌷



KOALA **2.0**
Super-Grip Phone Harness

TIE DYE        SHOP KOALA 2.0        REVIEWS        FAQ
NEW

PRIVACY POLICY

WHOLESALE

PRO-DEAL

INFLUENCERS

PRESS

1

# EXHIBIT 3

(1) Hangtime Gear | Facebook

facebook.com/hangtimegear

Search Facebook

Hangtime Gear

Learn more | Like | Message

Time to go offline and connect with nature. Here are the ...

3

25 views · 43 weeks ago

## Shop

See all

KOALA 2.0 Super-Grip ...
$29.00

KOALA 2.0 Super-Grip ...
$29.00

## Page transparency

See all

Facebook is showing information to help you better understand the purpose of a Page. See actions taken by the people who manage and post content.

Page created - June 8, 2016

Page manager locations include: United States, Bolivia, France

## Related Pages

SANTA FE CLIMBING CENTER
Rock Climbing Gym
Like

Gestalt HiFi
Electronics
Like

Drop Jaw Flies
Product/service
Like

**Hangtime Gear** is at **Castleton Tower**.

November 9, 2021 · Clifton, CO ·

The KOALA 2.0 is coming soon! With a stack of improvements based on customer feedback and suggestions. Pre-order on our website to reserve yours in time for the holidays. 🐨🐨🐨 #koalafy #optoutside #giftideas

17

2 Comments

